## EWING v. NATIONAL AIRPORT CORPORATION.

### No. 4690.

)Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1940.

William J. Hughes, Jr., and William E. Leahy, both of Washington, D.C., (Nicho-las J. Chiascione, of Washington, D. C., and Walter I. Young, of Alexandria, Va., on the brief), for appellant.

Gardner L. Boothe, of Alexandria, Va., for appellee.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action brought by Orman W. Ewing, appellant, here referred to as the plaintiff, against the appellee National Airport Corporation, here referred to as the defendant, in the District Court of the United States for the Eastern District of Virginia, at Alexandria. The complaint was filed in February, 1939, and a trial was had before a jury in April, 1940.

The object of the action was to recover for services rendered in securing the passage of a bill through Congress for the elimination of what was known as a Military Road which separated two airport landing fields. These fields constituted the Washington Airport, operated by the defendant, in the State of Virginia, just across the Potomac River from Washington, District of Columbia. The running of this road through the landing fields caused great inconvenience in the operation of the airport and it was also alleged that the operation of the airport constituted a menace to the general public using the road.

The officials of the defendant corporation, desiring to have the road closed and abandoned, entered into an agreement with the plaintiff, who was a former member of the National Committee of one of the major parties, for the State of Utah, to secure the passage of legislation for the abandonment of the Military Road. The plaintiff after talking with the Vice-President and General Manager of the Washington Airport went to New York to see the President of the National Aviation Corporation, which corporation owned all the stock of the defendant company and, after some negotiations, which were closed either in New York or on plaintiff's return to Washington (there is some conflict in the evidence on this point, which is immaterial), plaintiff entered into the services of the defendant corporation and was paid $500 a month for his expenses and services.

A bill providing for the abandonment of the road upon the defendants paying $25,000 to Arlington County, Virginia, with which to build a new road, was passed by

both houses of Congress but was vetoed by the President. Later another bill was introduced and passed by Congress and signed by the President.

The plaintiff claiming that he was to be paid an additional sum if successful in his efforts to have the road abandoned, demanded of the defendant $10,000, which the defendant refused to pay and the plaintiff brought this action.

At the close of plaintiff's evidence at the trial defendant moved for a directed verdict on the ground that the contract sued on was a lobbying contract and not enforceable at law. The court overruled the motion which was renewed at the end of the trial. Upon this latter motion the court reserved decision. The jury returned a verdict in favor of the plaintiff for $8,750. Thereupon the defendant moved to set aside the verdict and in arrest of judgment. The judge below, after hearing argument, entered an order setting aside the verdict and entered judgment for the defendant on the ground that the contract was a lobbying contract and not enforceable. From this action this appeal was brought.

The sole question involved on this appeal is whether the court was right in holding that the contract sued on was a lobbying contract and therefore unenforceable.

■■■ There is practically no conflict in the authorities which all hold to the effect that no court will lend its assistance in anyway toward carrying out the terms of an illegal contract; that a contract to secure the passage of legislation by any other means than the use of reason and presentation of facts, making arguments and submitting them orally or in writing, is invalid as a "lobbying contract".

The decisions of the United States Courts and of the Supreme Court of Appeals of Virginia are in accord on this principle. In the case of Campbell County v. Howard & Lee, 133 Va. 19, 112 S.E. 876, 889, the court said: "The authorities very generally hold that a contract to pay for services to be performed in the endeavor to obtain or defeat legislation by other means than the use of argument addressed to the reason of the legislators, such as, for example, for the exertion of personal or political influence apart from the appeal to reason as applied to the consideration of the merits or demerits of the legislation in question, is an illegal contract."

See, also: Old Dominion Transp. Co. v. Hamilton, 146 Va. 594, 131 S.E. 850, 46 A.L.R. 186; Camp et al. v. Bruce, 96 Va. 521, 31 S.E. 901, 43 L.R.A. 146, 70 Am.St. Rep. 873.

In the case of John W. Burke, Executor of Nicholas P. Trist v. Linus M. Child, 88 U.S. 441, 21 Wall. 441, 452, 22 L.Ed. 623, the court said:

" * * * The taint lies in the stipulation for pay. Where that exists, it affects fatally, in all its parts, the entire body of the contract. In all such cases, potior conditio defendentis. Where there is turpitude, the law will help neither party.

"The elder agent in this case is represented to have been a lawyer of ability and high character. The appellee is said to be equally worthy. This can make no difference as to the legal principles we have considered, nor in their application to the case in hand. The law is no respecter of persons."

See, also: Providence Tool Company v. Norris, 2 Wall. 45, 17 L.Ed. 868; Noonan v. Gilbert, 63 App.D.C. 30, 68 F.2d 775; Gesellschaft Fur Drahtlose Telegraphie M. B. H. v. Brown, 64 App.D.C. 357, 78 F.2d 410.

In Elliott on Contracts Vol. 2 p. 329, the author says: "The validity of a contract for procuring legislation is usually determined by the consideration as to whether or not it calls for or contemplates personal solicitation of or pressure brought to bear upon a member or members of a legislative body. If personal influence or personal solicitation is used or is contemplated by the contract, instead of open and fair argument, it is void."

See, also, annotations in 67 A.L.R. 685 and 29 A.L.R. 157.

■■■ Contingent fees for services in securing the passage of legislation are especially regarded with disfavor by the courts. Marshall v. B. & O. Railroad Company, 16 How. 314, 14 L.Ed. 953; Providence Tool Company v. Norris, supra.

■■■ A study of plaintiff's evidence given at the trial, and of letters admittedly written by him to the officers of the defendant corporation, shows conclusively that the plaintiff in securing the passage of the legislation in question used personal and political influence. As a former member of a national political committee he was in Washington doing lobbying work. He promised certain senators to exert politi-

cal influence for them in their home states in return for their help in the passage of the legislation he was favoring. He repeatedly admitted this in the letters he wrote and in the testimony he gave in the trial of the case. While the legislation may have been meritorious and while the plaintiff may have done nothing more than return personal favors for help in securing the passage of the bill he was advocating, he may not come into a court and enforce payment for his services before the Congress.

The judge below was clearly right in setting aside the verdict and entering judgment for the defendant.

Affirmed.